United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ENVIRONMENTAL PROTECTION INFORMATION CENTER, ET AL.,

    Plaintiffs,

    v.

UNITED STATES FOREST SERVICE,

    Defendant.
_____/

No. C-02-2708 JCS

**ORDER RE COMPLIANCE**

## I. INTRODUCTION

Plaintiffs sued the United States Forest Service under the National Environmental Policy Act ("NEPA") on the basis that the Forest Service failed to prepare an Environmental Assessment ("EA") or Environmental Impact Statement ("EIS") in connection with the issuance in 2001 of the Six Rivers National Forest Fire Management Plan ("the 2001 FMP"). On September 5, 2003, the Court issued its Findings of Fact and Conclusions of Law Re Liability ("the Liability Order"), finding in favor of Plaintiffs. The Court ordered the parties to meet and confer regarding remedy and has held a series of case management conferences in which the parties agreed to continue the matter to allow the Forest Service to respond administratively to the Court's Order. Having received briefs from the parties on this issue, the Court now addresses the question of whether, and to what extent, the Forest Service has complied with the Liability Order.

## II.   BACKGROUND[1]

At the liability phase of this action, the Forest Service asserted that the 2001 FMP was not subject to NEPA because it did not constitute "final agency action" under sections 702 and 704 of the Administrative Procedures Act ("APA") and therefore, there was no subject matter jurisdiction. Even if there was subject matter jurisdiction, the Forest Service argued, it was not required to complete an EA or an EIS because the 2001 FMP did not result in an "irreversible and irretrievable commitment of resources" and thus, there was no "major federal action" that required NEPA analysis.

The Court rejected both arguments. The Court concluded that the 2001 FMP represented final agency action because it was both the consummation of the agency's decision-making process and because it contained decisions that determined rights and obligations and thus, had legal consequences. In particular, the Court held that the 2001 FMP "ma[de] programmatic decisions regarding strategies and methods that are to be used in the Forest in the area of fire management." Liability Order at 8. The Court provided three *examples* of new decisions in the 2001 FMP to illustrate these points: 1) decisions regarding Port Orford Cedar ("POC") root disease; 2) decisions regarding Wildland Fire Use ("WFU"); and 3) decisions regarding fire suppression. *Id*. The Court went on to hold that the 2001 FMP constituted "major federal action," relying on case law that addresses the circumstances under which an overall plan, rather than a site specific plan, satisfies this requirement. The Court then concluded that "Defendant violated NEPA by failing to prepare an Environmental Assessment or and Environmental Impact Statement in connection with the issuance of the Six Rivers National Forest Fire Management Plan." *Id*. at 19.

In the Liability Order, the Court instructed the parties to meet and confer regarding remedy. Although one obvious remedy that the Forest Service might have pursued in response to the Court's Liability Order would have been to prepare an EA or an EIS, the Forest Service chose not to do so. Instead, the Forest Service has issued a revised FMP ("the 2005 FMP"). According to the Forest

---

[1]  The Court provided an extensive description of the 2001 FMP and the Land Resource Management Plan ("the Forest Plan") for Six Rivers, in its Liability Order. Therefore, the Court only summarizes briefly the relevant points regarding these documents.

2

Service, the 2005 FMP complies with the Liability Order because all final agency action has been removed from it. In particular, the Forest Service asserts that it has removed all decisions that were listed in the Court's Liability Order as "examples" of new decisions: it has taken all POC direction out of the 2005 FMP and completed a separate EA on those decisions; it has banned all use of WFU and removed all guidelines associated with the use of WFU; and it has removed all decisions identified by the Court relating to fire suppression. In addition, the Forest Service has removed direction relating to commercial harvesting as a method of fire prevention and to fuels management methods in research natural areas.

The Forest Service explains the rationale for its approach as follows: the agency's intent is to develop fire management direction at the level of the Forest Plan rather than at the level of the Fire Plan. To the extent the Court found that the 2001 FMP contained new decisions that went beyond the Forest Plan, the Liability Order merely reflects that the Forest Plan was inadequate. Therefore, the Forest Service asserts, it has removed all new fire management direction from the 2005 FMP and will include additional fire management direction in the Forest Plan, which the Forest Service intends to amend in 2010.

Plaintiffs, however, argue that the Forest Service has not complied with the Liability Order for three reasons. First, they assert that the 2005 Fire Plan still contains decisions that go beyond the Forest Plan that were in the 2001 FMP. According to Plaintiffs, this is not surprising because FMPs are intended to be "fundamental strategic documents." *See* Plaintiffs' Second Supplemental Opening Brief on Remedy at 5 (quoting 2001 Review and Update to 1995 Federal Wildland Fire Management Policy). Second, they argue that removal of many of the guidelines and decisions that were in the 2001 FMP – such as guidelines concerning the use of commercial harvesting for fire prevention – is itself a decision subject to NEPA. Third, they assert that the 2005 FMP contains new decisions, including the prohibition on WFU, which must undergo NEPA process. More generally, Plaintiffs assert that the Forest Service's approach is an impermissible effort to avoid NEPA by turning a comprehensive programmatic document into a series of "fragmented decisions scattered over a range of supplementary documents." Plaintiffs argue that in light of the Forest

3

Service's failure to comply, the Court should now order that the Forest Service complete an EA or EIS for the 2005 FMP.

## III. ANALYSIS

In its Liability Order, the Court concluded that the 2001 FMP was both a "final agency action" and a "major federal action" because it was a programmatic document containing strategies and policies for fire management that were not included in the Forest Plan. Having considered the parties' briefs and carefully reviewed the 2005 FMP, the Court concludes that the 2005 FMP remains such a document and, thus, that NEPA process is required. As was clear from the Court's Liability Order, the decisions that the Forest Service has removed from the 2005 FMP were merely examples of fire management direction, offered by the Court to illustrate the programmatic nature of the 2001 FMP. Their removal has not changed the nature of the document, which continues to include specific direction for fire management that goes beyond the Forest Plan. *See, e.g.,* 2005 Fire Plan at 47 ("where multiple fire states required prioritization, the Forest Duty Officer *will consider* the following criteria . . . ), 48 ("[s]uppression actions by initial attack resources *will be based* on the following considerations . . .") (emphasis added). Indeed, that is exactly what the Forest Plan stated would be included in the FMP. *See* LRMP at 116 (stating that "a Forest-wide Fire Management Action Plan will be developed . . ." and that "[s]trategies for future fire and fuels management will . . . be developed as part of this action plan"); *id.* at 117 (stating that "[n]aturally ignited fires may be managed as prescribed fires, as determined on a case-by-case basis through an assessment of hazard and risk and the direction found in the area specific fire management plan").

The Court is particularly troubled by the prohibition on WFU in the 2005 FMP. The Forest Service explains that it prohibited WFU in the 2005 FMP because the Court found that adoption of WFU guidelines in the 2001 FMP was final agency action that required NEPA compliance. According to the Forest Service, it had no choice, therefore, but to prohibit WFU because "without guidelines defining more clearly when and how to implement WFU there is not an adequate foundation" for its use. The prohibition on WFU, however, is itself final agency action subject to NEPA because it is a reversal of the policy that was expressly adopted in the Forest Plan regarding

4

1 WFU. In particular, the Forest Plan expressly permits WFU and promises further "direction" on its
2 use in the FMP. *See* LRMP at 117.

3       The Forest Service's reliance on *Minnesota Pesticide Info. and Educ., Inc. v. Espy*, 29 F.3d
4 442 (8th Cir. 1994), in support of its position that the WFU ban is not final agency action is
5 misplaced. In that case, the court held that the Forest Service's ban on the use of pesticides as a
6 method of vegetation control was not a final agency action because it was a "decision to not do
7 something." *Id.* at 443. The court noted that there would be no final agency action until the Forest
8 Service actually decided on an alternative method of vegetation control. *Id.* Here, the decision to
9 ban WFU is, when read in the context of the FMP as a whole, a decision to suppress all naturally
10 ignited fires rather than allowing some to be treated as prescribed fires. Thus, it amounts to the
11 adoption of an alternative method of fire management.

12       Nor is the Court persuaded by the Forest Service's assertion that the 2005 FMP is in
13 compliance with its Liability Order because WFU is not a significant issue. The importance of
14 reintroducing fire, including wildland fire, as a fire management tool has been repeatedly
15 emphasized in the Forest Service's own documents. Furthermore, the environmental "significance"
16 of the new fire management direction in the FMP is an issue that may be addressed in an EA, the
17 purpose of which is to determine whether a proposed action will have a significant effect on the
18 environment. *See* 40 C.F.R. §§ 1501.4, 1508.9. It is not a question that was raised at the liability
19 phase in this case and it need not be resolved here.

20       Finally, the Court rejects the Forest Service's assertion that its revision of the FMP complies
21 with the Court's Liability Order because it amounts simply to a withdrawal of its action, thereby
22 returning the agency to the status quo *ante*. In support of this assertion, the Forest Service cites by
23 analogy to cases in which courts have found that the Forest Service's withdrawal of site-specific
24 action was not final agency action. *See, e.g., Wyoming Sawmills, Inc. v. United States Forest Serv.*,
25 383 F. 3d 1241, 1259 n.9 (noting that withdrawal of timber sale was not final agency action). Those
26 cases are distinguishable, however, because the Forest Service has not simply withdrawn the 2001
27 FMP. Rather, it has replaced it with something new. The new FMP, like the old one, is a
28

5

1  programmatic document containing new fire management direction and therefore requires NEPA process.

2  The Court notes that although it has identified the WFU ban as an example of new fire
management direction in the 2005 FMP, the Forest Service cannot achieve compliance by subjecting
only that direction to NEPA. NEPA requires "coherent and comprehensive up-front environmental
analysis." *Churchill County v. Norton*, 276 F.3d 1060, 1072 (9th Cir. 2001); *see also Atchison,
Topeka and Santa Fe v. Callaway*, 382 F. Supp. 610, 620 (D.C. Dist. Ct., 1974) (holding that NEPA
requires that agencies "consider the impact of an overall program and not just isolated aspects" of it,
that is, "an agency may not engage in segmentation, i.e., an appraisal of each tree to one of the
forest"). Therefore, the entire 2005 FMP must undergo NEPA process.

## IV. CONCLUSION

Having concluded that the 2005 FMP is, like the 2001 FMP, subject to NEPA, the Court
holds that the Forest Service has failed to comply with its Liability Order. Therefore, the Court
ORDERS that the Forest Service complete an EA or EIS as to the 2005 FMP. The Forest Service
has informed the Court that an EIS can be completed in 26 months, and Plaintiffs have not objected
to that time period. Therefore, the Court ORDERS that if the Forest Service chooses to complete an
EIS, it shall be completed **no later than June 1, 2008.** In the alternative, if the Forest Service
chooses to complete an EA rather than an EIS, it shall notify the Court within thirty (30) days of the
date of this Order and provide the Court with a proposed schedule for completion of the EA. A
further case management conference will be held in 180 days regarding compliance. The Court
retains jurisdiction to review compliance with this Order and the Liability Order.

Whatever NEPA process the Forest Service chooses, the 2005 FMP may be used during the
interim period.[2] Further, the Court clarifies that nothing in this Order or the Liability Order prevents
the Forest Service from using WFU to the extent that such use is consistent with the guidance on
WFU contained in the Forest Plan.

---

[2] At the March 10, 2006 case management conference, Plaintiffs stipulated that they do not seek to enjoin use of the 2005 FMP, citing concern that such an action might hinder fire management at Six Rivers in the upcoming fire season.

IT IS SO ORDERED.

Dated: April 6, 2006

_____
JOSEPH C. SPERO
United States Magistrate Judge