UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENVIRONMENTAL PROTECTION INFORMATION CENTER, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES FOREST SERVICE, <br><br> Defendant. _____/ | No. C-02-2708 JCS <br><br> **ORDER DENYING REQUEST FOR INJUNCTIVE RELIEF AND DISMISSING ACTION AS MOOT** |

## I.  INTRODUCTION

Following the withdrawal of the 2005 Fire Management Plan for the Six Rivers National Forest, the Forest Service asserts that this action is moot and should be dismissed. Plaintiff Environmental Protection Information Center ("EPIC") takes the position that the voluntary cessation exception to the mootness doctrine applies and, therefore, it is entitled to injunctive relief notwithstanding the withdrawal of the 2005 Fire Management Plan. For the reasons stated below, the Court concludes that this action is moot. Accordingly, Plaintiffs' request for injunctive relief is denied and the action is dismissed.

## II.  BACKGROUND

On September 5, 2003, the Court ruled in favor of EPIC in this environmental action, holding that the Forest Service violated the National Environmental Policy Act ("NEPA") when it issued the 2001 Fire Management Plan for Six Rivers National Forest ("Six Rivers") without preparing an Environmental Evaluation ("EA") or Environmental Impact Statement ("EIS"). *See* Findings of Fact and Conclusions of Law re Liability ("the Liability Order"). The Court's ruling was based on its finding that the 2001 Fire Management Plan was not a purely operational document, but rather

contained fire management direction that went beyond the 1995 Land Resource Management Plan ("LRMP") for Six Rivers. After deciding the Liability Order, the Court directed the parties to meet and confer regarding an appropriate remedy.

In the two years that followed, the Forest Service did not complete an EA or EIS on the 2001 Fire Management Plan as a whole. Instead, it revised the fire plan, removing all of the "new decisions" cited as examples by the Court in its Liability Order. As to one of these, Port Orford Cedar ("POC"), the Forest Service completed an EA and issued a Decision Notice. In addition, Defendant's counsel has represented to the Court that the Forest Service conducted an "exhaustive review" of the fire plan in an effort to remove any other new decisions.

Following the issuance of the new fire plan (the 2005 Fire Management Plan), EPIC brought a motion to enforce, arguing that it did not comply with the Court's Liability Order because it, like the 2001 Fire Management Plan, contained decisions that required completion of an EA or EIS. The Forest Service argued strenuously, both in its briefs and at oral argument, that the 2005 Fire Management Plan contained no "decisions" that required NEPA process and therefore, that it was in compliance with the Court's Liability Order. In addition, at the March 10, 2006 case management conference, the Forest Service made clear that while it was attempting in good faith to comply with the Court's order, it continued to believe that the Six Rivers fire plan never did contain any decisions that required NEPA process and that to the extent the Court might order that an EA or EIS be completed as to the 2005 Fire Management Plan, the Forest Service would likely appeal the Court's Liability Order and seek a stay on any order requiring Defendant to complete an EA or EIS.

In an order dated April 6, 2006 ("the Compliance Order"), the Court held that the 2005 Fire Management Plan, like the earlier fire plan, contained new decisions and therefore was required to undergo NEPA process. The most prominent of these decisions was a prohibition on Wildland Fire Use ("WFU"). WFU is a a fire management tool that was to be permitted, according to the 1995 LRMP, under circumstances that were to be spelled out in the fire plan.

Subsequently, in the parties' May 17, 2006 Joint Status Report, the Forest Service notified the Court that it had decided to withdraw the 2005 Fire Management Plan. It also informed the Court that the Chief of the Forest Service had granted a waiver to Six Rivers of the policy requiring

2

each National Forest to maintain a fire management plan. Defendant's Notice Regarding Fire Plan, Ex. 1. In the Joint Status Report, the Forest Service stated that fire management at Six Rivers would be governed by the LRMP "for the foreseeable future." It stated further that it "intends to review whether there should be a fire plan for Six Rivers [National Forest] at all, and, if so, what should be included in the fire plan." The Forest Service also requested that the Court dismiss the action as moot and issue a final judgment that could be appealed.

The parties have now filed briefs addressing the mootness issue. EPIC asserts in its brief that because the Forest Service withdrew the fire plan in response to this litigation, the withdrawal makes the case moot only if the Forest Service can "demonstrate that it is *absolutely clear* that the . . . wrongful behavior could not reasonably be expected to recur." Plaintiff's Brief at 2 (quoting *Gwaltney of Smithfield v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 66 (1987)). EPIC further asserts that the Forest Service has not met that burden, pointing to the Forest Service's statement in the May 17, 2006 Joint Status Report that it had not yet decided if a fire plan was necessary, and if it was, what it should contain. EPIC also points to the requests for a waiver of the fire plan requirement by the Active Forest Supervisor and the Regional Forester, and the waiver granted by the Chief of the Forest Service, noting that they contain no explanation of the reasons for waiving this requirement and therefore offer no assurance that the waiver won't be revoked once this case is dismissed. EPIC requests that the Court, rather than dismissing the action as moot, enter a final remedy order and judgment "that embodies the Court's prior rulings by permanently enjoining Defendant from issuing a decisional FMP in violation of those rulings." Plaintiff's Brief at 5.[1]

The Forest Service asserts that the case is moot because in the face of the withdrawal of the 2005 Fire Management Plan, the Court can provide no effective relief. Further, it asserts that in

---

[1] Plaintiff requests the following specific language:

> It is ORDERED that Defendant United States Forest Service is permanently enjoined from issuing a Fire Management Plan or other document that contains decisions or programmatic policies for the management of fire on the Six Rivers National Forest unless and until Defendant fully complies with NEPA, 42 U.S.C. § 4321 et seq., as set forth in this Court's September 3, 2003 and April 6, 2006 orders.

Plaintiff's Brief at 5.

3

applying the voluntary cessation doctrine, the Court should presume that government officers "discharge their duties correctly, lawfully, and in good faith." Defendant's Brief at 5 (quoting *Frizelle v. Slater*, 111 F.3d 172, 177 (D.C. Cir. 1997)). Applying that standard, the Forest Service argues, it has met its burden of showing there is no reasonable likelihood it will engage in the challenged conduct in the future. In support of this position, the Forest Service points to a declaration by William Metz, Acting Forest Supervisor for Six Rivers, in which he states as follows:

> As documented in my May 23, 2006 letter to the Regional Forester, I have withdrawn the 2005 Fire Management Plan for the Six Rivers National Forest. I have no intent to issue any Fire Management Plan to replace the 2005 Fire Plan. While Forest Service Policy generally requires that each National Forest with burnable acres have an approved Fire Management Plan, the Six Rivers National Forest has been exempted from that policy. Therefore, there is no longer any Forest Service Manual Requirement for a Fire Plan for the Six Rivers National Forest. The withdrawal of the Six Rivers Fire Management Plan and the waiver of the Manual requirement to have such a plan do not affect the existing fire management direction found in the Six Rivers National Forest LRMP.
>
> Should I, my successor, or one of my superiors determine in the future that a Fire Management Plan that contains fire management direction beyond what is in the forest plan is necessary for the Six Rivers National Forest, such a Fire Plan would be issued consistent with the Court's liability order in this case issued in September 2003, unless a supervening legal change allows otherwise. That is, if the Six Rivers National Forest decides to issue a new Fire Management Plan that contains fire management direction that may significantly affect the quality of the human environment, and that direction has not previously gone through NEPA process, such direction will only be issued after the appropriate NEPA process has been completed.

Declaration of William Metz in Support of Defendant's Brief in Support of Finding of Mootness ("Metz Decl."), ¶¶ 2-3.

**III.   ANALYSIS**

   **A.   Legal Standard**

The primary foundation of mootness jurisprudence is Article III of the United States Constitution, which grants federal courts jurisdiction where there is a "case or controversy." *See Liner v. Jafco, Inc.*, 375 U.S. 301, 306 n. 3 (1964). Under Article III, "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot." *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953). The

4

Court in *W. T. Grant* explains that because a defendant is "free to return to his old ways," a "controversy remains to be settled in such circumstances." *Id*. at 632.  Accordingly, where the defendant voluntarily ceases to engage in the challenged conduct, the case becomes moot only if the defendant meets the "heavy burden" of demonstrating that "there is no reasonable expectation that the wrong will be repeated." *Id*. (citations omitted).

Courts sitting in equity have also declined historically to issue an injunction where the court concludes that no effective relief can be granted. *Mills v. Green*, 159 U.S. 651, 653 (1895) (holding that where, as a result of changing circumstances, it is impossible for the court to grant "any effectual relief whatever," it is proper for court to dismiss the action as moot rather than proceeding to a formal judgment). While this doctrine has sometimes loosely been referred to as "discretionary" mootness, it is in practice an inquiry into whether injunctive or other equitable relief should be ordered using traditional equitable principles. *U.S. Steel Corp. v. Indus. Welfare Comm'n of California*, 473 F. Supp. 537, 539 (noting that "[c]ourt decisions dealing with the mootness doctrine have not produced clear distinctions between mootness as a constitutional matter and mootness as a discretionary matter reflecting remedial considerations. It is recognized, however, that the courts possess discretion in certain cases to withhold injunctive relief on the ground of mootness although a constitutional case or controversy does exist").

These principles are illustrated in *United States v. W. T. Grant Co*. In *W. T. Grant*, the Supreme Court affirmed the lower court's dismissal of the action where the defendants had voluntarily ceased to engage in the alleged wrongful conduct. First, the Court concluded that the case was not moot, because the defendants had not met the burden of showing that there was no reasonable expectation the wrong would be repeated. 345 U.S. at 633. Nonetheless, the Court concluded that the case was correctly dismissed. *Id.* At 635-636. The Court explained that even though the defendants' disclaimers of any intent to resume the challenged conduct were not sufficient to show there was no reasonable expectation the wrong would be repeated, they were "one of the factors to be considered in determining the appropriateness of granting an injunction against the now discontinued acts." *Id*. at 633. The Court went on to hold that the district court's denial of the plaintiff's request for an injunction enjoining future violations was proper because the plaintiffs

5

did not show that there was a need for such relief. *Id*. at 636; *see also Nw. Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1245-1246 (9th Cir. 1988) (holding that in determining whether a case is moot, "the question is not whether the precise relief sought at the time the application for an injunction was filed is still available [but rather] whether there can be *any* effective relief").

In this case, EPIC asserts that the case is not moot because the Forest Service has not met the heavy burden that is applied in cases involving voluntary cessation. The Forest Service, on the other hand, asserts that it has met that burden and moreover, the case is moot because no effective relief remains to be granted. The Court concludes that although the Forest Service has not established that there is no reasonable expectation that the wrong will be repeated, there also is no effective relief available under the circumstances and therefore, the case is moot.

**B.      Voluntary Cessation**

In cases involving voluntary cessation of challenged conduct by public officials, courts generally find that the burden set forth above is met where the cessation of challenged conduct is accompanied by circumstances indicating the change is a "genuine" act of "self-correction." *See Magnuson v. City of Hickory Hills*, 933 F. 2d 562, 565 (7th Cir. 1991); *see also* 13A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3533.7 (2d ed. 2004) (noting that while "[c]ourts are more apt to trust public officials than private defendants to desist from future violations . . . the tendency to trust public officials is not complete . . . nor is it invoked automatically"). On the other hand, where the defendant has ceased to engage in the challenged conduct only for practical or strategic reasons – such as avoiding litigation – the cessation does not make the case moot. *See United States v. Gov't of Virgin Islands*, 363 F.3d 276, 285 (3d Cir. 2004) (holding that where Government of Virgin Islands withdrew from challenged contract just before litigation was initiated and governor offered only general reason that withdrawal was in the "best interest" of the Virgin Islands, voluntary cessation was likely only a strategic move to avoid litigation and therefore case was not moot).

Among the factors courts have considered in determining whether there is reasonable likelihood the challenged conduct will recur are: 1) whether the defendant has shown that a change was the result of serious deliberation and was made for convincing reasons (other than the desire to

6

avoid litigation); 2) the extent to which the defendant has committed not to engage in the challenged practice in the future and the degree to which any promises made are likely to be binding; and 3) whether the cessation is based on external circumstances that have made a recurrence of the challenged conduct impossible or impractical.

### 1.     Reasons for Cessation

To understand the motivations of the defendant – and thus to determine the likelihood of a future recurrence of the challenged conduct – courts often consider whether the defendant has offered convincing reasons for its policy change or at least, has engaged in "serious deliberation." *See, e.g., Jews for Jesus v. Hillsborough County Aviation Auth.*, 162 F.3d 627 (11th Cir. 1998) (holding that defendant airport authority was not likely to revert to previous policy of prohibiting distribution of free literature at airport where change in policy allowing plaintiffs to distribute free literature was the result of "serious deliberation" and had been consistently applied for three years). Where a defendant has offered only conclusory reasons for the cessation of challenged conduct – or reasons that are not persuasive – courts often decline to find an action moot. *See, e.g., United States v. Gov't of Virgin Islands*, 363 F.3d 276, 285 (3d Cir. 2004) (holding that defendant did not establish mootness where Government of Virgin Islands withdrew from challenged contract just before litigation was initiated and governor offered only general reason that withdrawal was in the "best interest" of the Virgin Islands).

Where a defendant has not conceded that its past conduct is illegal, courts are less likely to find a cessation of challenged conduct makes the case moot. *See Armster v. United States Dist. Court for the Cent. Dist. of California,* 806 F.2d 1347, 1359 (9th Cir. 1986) (holding that where Justice Department did not concede that challenged conduct was illegal, bare assertion that it would not recur was insufficient to establish mootness because "[i]t has long been recognized that the likelihood of recurrence of challenged activity is more substantial when the cessation is not based on a recognition of the initial illegality of that conduct"); *see also Sasnett v. Litscher*, 197 F.3d 290, 291-292 (7th Cir. 1999).

In *Sasnett*, the plaintiffs were prisoners who challenged a regulation that prohibited them from possessing crosses under the United States and Wisconsin constitutions and under the

7

Religious Freedom Restoration Act ("RFRA"). 197 F.3d at 291. The district court held that the regulation violated the RFRA and did not consider the plaintiffs' other claims. *Id.* In response, the defendant replaced the challenged regulation with a new regulation allowing crosses. *Id.* Subsequently, however, the Supreme Court held that the RFRA was unconstitutional and the case was remanded to the district court to consider the plaintiffs' constitutional claims. *Id.* The district court held that the prohibition on crosses did not violate the plaintiffs' constitutional rights and the plaintiffs appealed. *Id.* On appeal, the court considered whether the change in the regulation following the first round of litigation made the case moot. *Id.* The court concluded that it did not, reasoning as follows:

> Even after the new regulation was in force, the defendants continued to pursue the litigation by asking the Supreme Court to review our decision invalidating the old regulation. So they didn't think the suit had been mooted by the adoption of the new regulation, which implies that they wanted to go back to the old one. Maybe they just wished to have the latitude to do so if circumstances changed; and in their briefs and at argument their lawyer told us that the state has no present intention of reinstating the old regulation if the district court's decision dismissing the suit is affirmed. But that is far from being an assurance, or even a prediction, that the state will not do so. The state vigorously defends the old regulation as justified by security concerns, and if this defense is sincere, as we have no reason to doubt that it is, it implies a high likelihood of returning to the old regulation unless that regulation is enjoined.

*Id.*

Acknowledgment on the part of the defendant that the challenged conduct is illegal or unconstitutional may be sufficient to establish mootness, although, if the reviewing court does not agree that conduct is clearly barred, such an acknowledgment may not be sufficient show that the challenged conduct will not recur. *See, e.g., Ragsdale v. Turnock*, 841 F.2d 1358 (7th Cir.1988). In *Ragsdale*, the plaintiffs were physicians and women desiring to obtain abortions who sued the Illinois Department of Public Health, challenging three Illinois statutes and a related licensing scheme regulating the provision of abortions. 841 F.2d at 1360. The defendant asserted that the challenge was moot as to two provisions that were not being enforced. *Id* at 1363. As to one of these provisions, relating to a requirement that second term abortions be performed in hospitals, the court agreed. *Id.* at 1366. As to another, relating to reporting requirements, the court concluded

8

there was a reasonable likelihood that the provision might be enforced in the future, and thus, the claim was not moot. *Id*. at 1366.

The court in *Ragsdale* distinguished between the two provisions on the basis of the reasons offered by the defendant for their non-enforcement: as to the hospitalization requirement, there was "clear Supreme Court precedent" barring its enforcement and the defendant had presented an internal memorandum, circulated at the time the relevant Supreme Court decisions were issued, expressing the opinion that the provision was unconstitutional; as to the reporting requirement, in contrast, the defendant justified its non-enforcement on the basis of a district court decision that the court concluded did not bar enforcement of the provision. *Id*. at 1365. In particular, the court stated, "we have reviewed that decision and cannot find anything in it which remotely supports the conclusion that the requirement under challenge here was enjoined." *Id*. The court also noted that in contrast to the provision discussed above, "the State produced no pre-existing documentation of the policy." *Id*. The court concluded, "[w]e share the district court's concern that the State's position on this provision is asserted only in this litigation." *Id*.; *see also Rhode Island Ass'n of Realtors v. Whitehouse*, 199 F.3d 26, 34-36 (1st Cir. 1999) (holding that "conclusory" assertion by attorney general that "he did not presently believe" that challenged statute applied to plaintiffs' conduct was not sufficient to render action moot).

The likelihood of recurrence of challenged conduct may be found to be less where there is evidence that the defendant's shift in policy is consistent with longstanding plans that predate the litigation. *See Wilderness Watch v. Mainella*, 375 F.3d 1085 (11th Cir. 2004). In *Wilderness Watch*, the plaintiffs challenged the National Park Service's practice of transporting visitors by motor vehicle across the wilderness area on Cumberland Island, Georgia, arguing that the Park Service had not conducted the investigation and analysis of this practice required under NEPA. *Id*. at 1087. During the course of the litigation, the Park Service discontinued the practice and instituted a policy of transporting tourists by boat only. *Id*. at 1090 n. 6. The court held that this change made the action moot, rejecting the voluntary cessation exception on the basis of evidence in the record that the Park Service had "always intended to shift from land service to boat service so long as the latter proved feasible." *Id*.

9

### 2. Nature of Promise Not to Resume Challenged Conduct

Another consideration, closely related to the one discussed above, is the nature of the guarantees offered by the defendant that it will not engage in the challenged conduct in the future. Promises to "vigorously" defend a new policy in the future may be sufficient to convince the court that there is no reasonable likelihood of recurrence. *See, e.g., Quincy Oil v. Fed. Energy Admin.*, 620 F.2d 890, 895 (Em. App. 1980) (holding that where agency issued ruling adopting plaintiff's position and promised it would "vigorously defend" the new policy against attack, possibility of recurrence was speculative and case was moot). On the other hand, where defendants leave open the possibility that they might resume the challenged conduct, courts tend to find that the voluntary cessation doctrine applies. *See, e.g., Wilcher v. City of Wilmington*, 139 F.3d 366, 370 n. 2 (3d Cir. 1998) (holding that where city had discontinued challenged policy but had reserved the right to resume the challenged policy in the future and had not conceded that former policy was impermissible, case was not moot).

Promises of future compliance with laws alleged to have been violated have often been found insufficient to establish mootness. For example, in *Group Against Smog and Pollution, Inc. v. United States Envtl. Prot. Agency*, 665 F.2d 1284 (D.C. Cir. 1981), plaintiffs challenged a regulation promulgated under the Clean Air Amendments of 1970 on the basis that it excluded "fugitive" emissions. Subsequently, the EPA informed the court that it had decided to revise the regulation to include fugitive emissions and argued the case was therefore moot. *Id*. at 1291. At the time of the decision, the EPA had not yet issued the proposed regulation but projected it would be issued within the next several months. *Id*. The court concluded that the EPA's promise to revise the regulation was not sufficient to establish mootness because issuance of the proposed regulation had been delayed already and it was not clear it would be issued even by the new projected date. *Id.*; *see also New York Pub. Interest Research Group v. Whitman*, 321 F.3d 316, 327 (2d Cir. 2003) (holding that letter of commitment citing changes that had been made as well as those that would be made in the future to bring defendant into compliance with environmental law was insufficient to show that there was no reasonable possibility of recurrence of challenged conduct).

10

### 3. Changes in External Circumstances

Where there has been a change in external circumstances that makes the original conduct impossible or which eliminates the original reasons for the conduct, a defendant's voluntary cessation of the challenged conduct is likely to result in mootness. *See, e.g., Forest Serv. Employees for Envtl. Ethics v. United States Forest Serv.*, 408 F. Supp. 2d 916 (N.D. Cal. 2006).

In *Forest Service Employees*, the plaintiffs challenged the Forest Service's proposal to sell for logging some trees in Six Rivers that had been damaged by fire, arguing that the Forest Service had not properly conducted an environmental assessment with respect to the plan and therefore, it should be enjoined. *Id*. at 917. The Forest Service urged the court to rule quickly on the plaintiff's motion for a preliminary injunction, informing the court that the plan could not go forward if logging did not begin by June 30, 2005 because the trees were rapidly deteriorating and soon would have little value as timber. *Id*. On June 27, 2005, the court ruled in favor of the plaintiffs and issued a preliminary injunction prohibiting the Forest Service from going forward with the sale. *Id*. Soon thereafter, the Forest Service withdrew the decision memorandum approving the sale that had been the subject of the challenge and asked the court to vacate the injunction on the basis that the case was moot. *Id*. at 917-918. The court concluded the case was moot, citing extensively to evidence offered by the Forest Service that made a "compelling case that the . . . sale [was] no longer economically feasible."[2] *Id*. at 919.

### 4. Likelihood of Recurrence in this Case

In order to determine the likelihood that the Forest Service will return to its "old ways," the Court must, as a preliminary matter, define what "old ways" it is concerned about. *See Clarke v. United States*, 915 F.2d 699, 703 (D.C. Cir. 1990) (noting that "[t]he more broadly we define the wrongful conduct . . . the greater the likelihood of repetition"). An extremely narrow definition of

---

[2] The court in *Forest Service Employees* also emphasized that if the Forest Service were to decide in the future to authorize a new sale of the trees, that decision would be required to go through the administrative process again such that a challenge to the sale would give rise to a "different lawsuit and administrative record." *Id*. at 919. This point goes to whether the court should exercise its discretion to grant injunctive relief in light of the effectiveness (or lack of effectiveness) of the remedy that is sought, discussed below.

11

the relevant conduct would limit the inquiry to the likelihood that the Forest Service would reissue the exact fire plan that was the original focus of the lawsuit, the 2001 Fire Management Plan. The Supreme Court has rejected such a narrow approach, however. *See Ne. Florida Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 661 (1993) (holding that where challenged statute had been amended in some ways, changes did not make the case moot and noting that "*City of Mesquite* does not stand for the proposition that it is only the possibility that the *selfsame* statute will be enacted that prevents a case from being moot; if that were the rule, a defendant could moot a case by repealing the challenged statute and replacing it with one that differs only in some insignificant respect)." At the opposite end of the spectrum, the Court could define the wrongful conduct broadly as issuance of the fire plan without complying with NEPA requirements. This definition, however, would encompass a great deal of conduct that was never at issue in this lawsuit and thus, is almost certainly overbroad.

The Court concludes that a reasonable middle ground frames the mootness inquiry in terms of the likelihood that the Forest Service will issue another fire plan for Six Rivers that contains decisions that require NEPA review. Indeed, the Court implicitly adopted this approach when it concluded that the 2005 Fire Management Plan did not comply with the Liability Order because it replaced decisions in the 2001 Fire Plan with new decisions that also required NEPA process.

Applying the case law described above, the Court concludes that the Forest Service has not met the "stringent" test that is applied when a defendant voluntarily ceases to engage in challenged conduct. First, there is no evidence that the withdrawal of the 2005 Fire Management Plan represents a "genuine" change in policy rather than merely a strategic move in response to the litigation.[3] Indeed, the Forest Service in this case has made no pretense that its actions represent a shift in thinking, in contrast to the facts in many of the cases discussed above. Rather, it has

---

[3] In drawing this conclusion, the Court does not impute to the Forest Service any bad faith or nefarious plan to secure a dismissal on mootness grounds simply in order to evade this Court's review. To the contrary, the efforts made to comply with this Court's order were clearly made in good faith. Similarly, the Court has no reason to doubt that the Forest Service's continued adherence to the position that the 2001 and 2005 Fire Management Plans did not contain decisions requiring NEPA review is in good faith. Nonetheless, the Forest Service's position makes the likelihood of recurrence higher than it would be if the withdrawal of the fire plan represented a genuine act of "self-correction."

12

consistently taken the position that neither of the fire plans that was presented to the Court in this action contained fire management direction that required NEPA process. Even as the Forest Service argued the case was moot, in fact, it requested that the Court issue a judgment that would allow the Forest Service to pursue an appeal. Nor does the one-line statement by the Chief of the Forest Service waiving the fire plan requirement for Six Rivers offer any evidence that the waiver reflected a genuine shift in the Forest Service's thinking, either as to the importance of fire plans or their content. In short, it is clear that the 2005 Fire Management Plan was withdrawn for the sole reason that the Court found that it did not comply with its Liability Order.

Second, the declaration of the Acting Forest Supervisor of Six Rivers, William Metz, does not offer the sort of assurance that might make "absolutely clear" that there is no reasonable possibility of recurrence. In particular, while Metz states that he has no "intent" to replace the 2005 Fire Plan with a new fire plan, he leaves open the possibility that he may decide in the future that it is necessary to issue a new fire plan containing fire management direction. This is consistent with counsel's representation in its May 17, 2006 Joint Status Report that it intends to "review whether there should be a fire plan for Six Rivers [National Forest] at all, and if so, what should be included in the fire plan." Further, Metz states that if the Forest Service issues a new fire plan containing fire management direction, the Forest Service will conduct appropriate NEPA process, consistent with this Court's order. Again, while the Court does not question the Forest Service's good faith in making this statement, such a conclusory promise of future compliance does not carry a great deal of weight, especially in light of the fact that the Forest Service failed to achieve this objective despite "exhaustive" efforts, when it issued the 2005 Fire Management Plan.

Finally, there has been no change in external circumstances that makes it clear the challenged conduct will not recur. In contrast to the facts in *Forest Service Employees for Environmental Ethics*, there is no evidence that Six Rivers no longer needs a fire plan or that issuance of a fire plan is no longer possible. For these reasons, the Court concludes that the Forest Service has not met the heavy burden of showing that there is no reasonable likelihood that the challenged conduct will occur again.

13

The cases cited by the Forest Service do not support a contrary result. First, while the Forest Service is correct that public officials are presumed to discharge their duties in good faith, the cases cited by the Forest Service on this point do not stand for the proposition that a promise to refrain from challenged conduct in the future is, by itself, sufficient to meet the stringent test that is applied in voluntary cessation cases. *See Coral Springs St. Sys. v. City of Sunrise*, 371 F.3d 1320 (11th Cir. 2004); *Frizelle v. Slater*, 111 F.3d 172, 177 (D.C. Cir. 1997); *Ragsdale v. Turnock*, 841 F.2d 1358, 1365 (7th Cir. 1988).

One of these decisions, *Frizelle*, referred to the "strong but rebuttable presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith." 111 F.3d at 177. However, that case did not involve a question of mootness, much less, how such a presumption might be applied where the defendant voluntarily ceases to engage in the challenged conduct. *Ragsdale*, as discussed above, shows that notwithstanding any presumption of good faith that may be applied to public officials, courts do not take assurances by public officials regarding future conduct at face value, but rather, look beyond these statements to determine whether or not they are persuasive.

*Coral Springs* is distinguishable. In *Coral Springs,* the court addressed whether the amendment of a challenged sign ordinance before the case was initiated made the case moot. 371 F.3d 1320, 1324 (11th Cir. 2004). The plaintiff had applied for a sign permit from the city and the application had been denied. *Id*. In response to the denial, the plaintiff's counsel wrote a letter to the city complaining that the ordinance violated the First Amendment. *Id*. at 1326. Within sixteen days, and before the plaintiff sued the city, the city amended the statute "with nary a whimper of protest." *Id*. The plaintiff did not reapply before bringing a legal challenge to the statute. *Id*. The court held that the case was moot because there was no reasonable expectation that the wrong would be repeated. Although it pointed out that "[c]ourts are more apt to trust public officials than private defendants to desist from future violations," it also went on to distinguish the facts from other cases in which voluntary cessation by public officials well after they had been sued *did not* render actions moot. *Id*. In particular, the court emphasized the city's prompt amendment of the challenged statute in response to "a single letter" from the plaintiff and the fact that it responded before the lawsuit had

14

even been filed. *Id*. Here, in contrast to *Coral Springs*, the withdrawal of the 2005 Fire Plan occurred only after years of litigation in which the Forest Service has consistently maintained the correctness of its approach, and continues to do so.

### C. Effective Remedy

While this case is not moot as a constitutional matter, the court may decline to hear the matter where no effective relief can be granted. *Mills v. Green*, 159 U.S. 651, 653 (1895). Where past actions have been withdrawn and there is only a "possibility" that they will recur, courts are generally reluctant to grant injunctive relief enjoining future violations, even where there may be a constitutional case or controversy. *See W. T. Grant*, 345 U.S. at 633. This is particularly the case where the future conduct at issue is agency action. *See Abbot Labs. v. Gardner*, 387 U.S. 136, 149 (1967) (noting that "[t]he injunctive and declaratory judgment remedies are discretionary and courts traditionally have been reluctant to apply them to administrative determinations unless these arise in a context of a controversy "ripe" for judicial resolution"); *see also Forest Serv. Employees for Envtl. Ethics*, 408 F. Supp. 2d at 918, 919 (holding that finding of mootness was supported in part by fact that "any subsequent decision to proceed with the sale would need to pass through the administrative process once again . . . [and] a court reviewing a future sale of the trees covered by this Court's preliminary injunction would likely face a different lawsuit and administrative record than what this Court has considered").

The concern about ripeness where future agency action is at issue can be seen in *Sierra Club v. Penfold*, 857 F.2d 1307, 1319 (9th Cir. 1988). In that case, the plaintiff challenged the adequacy of (already completed) environmental evaluations by the Bureau of Land Management ("BLM") regarding certain mining operations and sought an injunction staying the mining operations until the BLM had complied. *Id*. at 1317. The plaintiff and the BLM entered into a settlement under which the BLM agreed to prepare new evaluations that complied with the relevant environmental laws before authorizing any mining for the 1986 mining season and the plaintiff withdrew its motion for an injunction. *Id*. The stipulation was to expire on December 31, 1986, but the mining season ended around August or September. *Id*. The plaintiff brought a motion for compliance in July and the court found that it was moot. *Id*. In reaching this conclusion, the court concluded that to the

15

extent the mining season for 1986 was already over, an order requiring compliance for the 1986 mining season would be meaningless, as the mining that had already occurred could not be undone. *Id*. The court also held that the district court had properly denied a motion by the plaintiff for a permanent injunction requiring that the BLM comply with the relevant environmental laws in completing future environmental evaluations. *Id*. at 1318. The court found that the plaintiff's claim was not ripe, explaining its reasoning as follows:

> We fail to see how BLM's actions have presented an issue fit for judicial decision. In this record, we find nothing to show what BLM's policy will be in future years. It would be a mistake for us to assume that because an EA was inadequate in the past, BLM will not comply with NEPA in the future. . . . The adequacy of the EA's involves a question of fact, and facts are not found in this record. Our review of Sierra Club's contentions would be assisted by a factual record. "Any party . . . aggrieved by a decision" of the BLM has the right to pursue an administrative appeal up through the Board of Land Appeals. 43 C.F.R. § 3809.4(f). Under the administrative review procedure, Sierra Club can present facts which show a NEPA violation. Once this procedure is exhausted, a record for review would be established. We presently have no reason to believe judicial review is necessary. Should we not assume that the Board of Land Appeals will thoroughly review the adequacy of the EA's? If an EA is shown to be inadequate, the Board will order the appropriate remedy and Sierra Club will be granted relief without resorting to judicial review. Sierra Club's claim is not ripe for judicial review. When an inadequate EA is contested as a matter of fact, review should then proceed through the administrative process and a question of adequacy can be resolved. With the claim ripe for review and the administrative appeals exhausted, Sierra Club can then seek judicial relief.

*Id*. at 1319.

Here, the Court concludes that even if there may be an active case or controversy, it is appropriate for it to exercise its discretion to deny the injunctive relief sought by EPIC. The fire plan that originally was the subject of this action was abandoned long ago. The Forest Service has also represented to the Court that it will not reissue the 2005 Fire Management Plan and will rely on the guidance in the LRMP for the foreseeable future. While these assertions are not sufficient to establish that the action is moot under the voluntary cessation doctrine, the Court does consider them to be significant in determining an appropriate remedy. In particular, there is, at most, a *possibility* that the Forest Service will issue another fire plan for Six Rivers containing decisions that require an EA or EIS. If it does, it will be the product of a new administrative process and likely will raise new

16

issues that have not been addressed in this lawsuit. Such a remote and undefined future set of events is not an appropriate subject for an injunction. Indeed, even EPIC could not come up with a proposed injunction that would require or forbid any specific contemplated actions by the Forest Service: the proposed language would require that the Forest Service comply with NEPA before it issues a future Fire Plan. This is essentially a proposed injunction to comply with the law, something the Forest Service is obligated to do regardless of the outcome of this case. Thus, the harm from which EPIC seeks protection is simply too vague and remote to justify entry of injunctive relief at this time. Therefore, the Court concludes that the action is moot.

**IV.    CONCLUSION**

The case is DISMISSED. The Clerk is ordered to close the file in this case.

IT IS SO ORDERED.

Dated:  July 28, 2006

_____
JOSEPH C. SPERO
United States Magistrate Judge